[Crim. No. 638.   Second Appellate District, Division One.—February 5, 1919.]

## THE PEOPLE, Respondent, v. CARL SEELEY, Appellant.

CRIMINAL LAW—ASSAULT WITH INTENT TO MURDER—SELF-DEFENSE—RESISTANCE TO UNLAWFUL SEARCH — INSTRUCTION PROPERLY REFUSED.—On the trial of a charge of assault with intent to murder, the victim of the assault being a police officer, a requested instruction that it was unlawful for an officer to search a person, unless he had first lawfully placed him under arrest, was properly refused when the evidence on neither side tended to show that any attempt was being made by the officer to search the appellant.

ID.—PROTECTING MERE COMPANION FROM UNLAWFUL SEARCH.—One convicted of an assault with intent to murder had no such relation to a mere companion as would entitle him to resort to a deadly weapon to protect such companion from an unlawful search.

ID.—UNLAWFUL ARREST—INSTRUCTION AS TO JUSTIFIABLE FORCE IN RESISTING.—Instructions intended to advise the jury that where an unlawful arrest was attempted to be made, any force necessary to prevent its accomplishment was justifiable, did not correctly state the law, and were properly refused.

ID.—DUPLICATED INSTRUCTIONS AS TO SELF-DEFENSE PROPERLY REFUSED. Instructions containing correct statements of the rights involved in the law of self-defense were properly refused when the court in other instructions given had very fully advised the jury upon that matter.

ID.—CONVICTION SUPPORTED BY COMPLETE RECORD.—In this prosecution for assault with intent to murder, the verdict and judgment of conviction are supported by the complete record.

APPEAL from a judgment of the Superior Court of Los Angeles County.   Frank R. Willis, Judge.   Affirmed.

The facts are stated in the opinion of the court.

Guy Eddie and Chas. Morfoot for Appellant.

U. S. Webb, Attorney-General, Joseph L. Lewinsohn, Deputy Attorney-General, and Jerry H. Powell for Respondent.

JAMES, J.—Appeal from the judgment of imprisonment following conviction upon a charge of assault with intent to commit murder.

By the information filed by the district attorney this appellant, in the first count thereof, is charged with having murdered Dale Finnegar; in the second count he is charged with having, on the same day, committed the assault with intent to murder D. C. Huling, who was a police officer. The jury returned a verdict of not guilty as to the charge of murder. Both charges grew out of an occurrence participated in by Huling, the police officer, Finnegar, the deceased, and Seeley, the defendant. Seeley and Finnegar were, at the time charged, of the respective ages of nineteen and eighteen years. Finnegar having been killed, the only two eyewitnesses to the affray who appeared at the trial were Huling, the officer, and the defendant. The officer testified that at about 11 o'clock on a night in April, 1918, he was traversing his beat in the lower part of the city of Los Angeles, and at the moment was on his way to a signal-box located near by, for the purpose of "reporting in" to headquarters. On one of the streets included within his beat was a bakery operated by persons known to the officer. Huling testified that as he approached this bakery he noticed two men standing near the same, and that he immediately set about to observe them; that he approached on the opposite side of the street, where it was dark, in the meantime observing that one of the men had entered the bakery and the other had walked some twenty feet up the street, where he stopped. The officer was clothed in his official uniform, with a star, all of which apparel, we may note here, the appellant admitted in his testimony he had observed before the trouble began. Huling testified that he approached the man on the sidewalk, that being Finnegar, and asked him where he was from, how old he was, and his name; that Finnegar told him he was eighteen years old and was from Long Beach, and also stated, in response to the officer's question, the direction from which he had come. Finnegar took a return ticket to Long Beach from his pocket, which he showed; that at this time the defendant came hurriedly out of the bakery and was about to pass the officer and the other man without stopping, and that he, the police officer, called to him, "Just a minute, young fellow"; that the defendant was then asked whether he was from Long Beach, too, and he replied, "Yes," and stated his age to be nineteen years. The officer then testified as follows: "I asked him his age and he said, 'Nineteen years of age.' Then I said, 'Have you

boys any guns on you?' I believe those are the words I used. They didn't answer that question, and I proceeded to search this Finnegar, the dead boy. I put my hand on the side of his coat pocket. I felt the revolver in his pocket. I just put my hand on his pocket when the defendant here, he pulled a gun from his right pocket, and he says, 'You turn him loose,' pointing in the direction of Finnegar, and I said, 'Don't be a fool, kid.' I said, 'Drop that gun and throw up your hands.' Of course, he didn't do it. I continued to take this gun off of Finnegar. Just as I got the gun—well, before I had taken the gun from Finnegar's pockets, this boy was just like a prizefighter—jumping this way, and this way, trying to shoot me in the sides. Of course, I caught Finnegar in the back of the coat collar and held him right in between me and the defendant, and he was getting so close to me, just as I had taken the gun out of Finnegar's pocket, that I called to him again, just as I got the gun clear, and I said, 'If you don't drop that gun and throw up your hands I will shoot your brains out.' Well, he didn't stop. He kept bucking around there, and I snapped the gun a couple of times on him. The gun failed to fire; and while my hand was extended in front of Finnegar, he shot me through this arm here. I grabbed Finnegar by the coat collar like that, and jerked him down like this; then I crouched like this, Finnegar between us; so that defendant jumped from that side to the other, and of course I kept out of his way. I felt perfectly confident I could best him, but when he was getting so close, coming up too close, that he could shoot around—I couldn't get my gun, and I couldn't have this gun loose in this man's pocket, because he could put his hand in his own pocket and shoot me out through his coat pocket, so I thought it best to take the gun from his hands; so I extended my hand like that, snapped the gun a couple of times, telling him even the second time to throw up his hands, but he shot me while I was in that position, just about like that, and the bullet went through there and here, and struck me here, and out through my side like that. I fell on the ground—on the sidewalk.'' The officer further testified that after he had fallen to the ground, the appellant continued to shoot and that he, the officer, was unable to get his own ''gun'' from his pocket, because his hand seemed paralyzed from a shot, and that while he was lying on the ground the appellant shot him several

times more; that he, the witness, finally succeeded in drawing his weapon and supporting it over his arms; whereupon the appellant ran away, the witness firing several shots, which failed to take effect. It seems that the officer was wounded in four or five places by the bullets fired by the appellant. Some one of the bullets, apparently one from the gun of appellant, killed Finnegar; hence the double charge as made by the information. The appellant, after his arrest, made a statement to the officers, which was introduced in evidence, in substance generally corroborative of the narrative given by the police officer. However, at the trial he made a different statement as to the occurrence, in which he declared that he did not attempt to shoot the officer until the latter had knocked him down and was upon him on the sidewalk. He admitted at the trial that he fired six shots in rapid succession at the officer. He did not contend in his testimony that the officer had attempted to search him, but declared that the latter had jumped upon him and thrown him to the sidewalk, and that he, the appellant, had then used his weapon to defend himself.

The court instructed the jury very fully as to the right of self-defense, and the extent to which a person may go in protecting himself against an unlawful assault, and also advised the jury as to the circumstances under which an officer is justified in making an arrest. The court further advised the jury that ''an officer who acts without proper authority stands on the same footing as any person who is not an officer.'' The case presented, under the testimony and instructions, was one involving the question as to whether the act of the defendant in wounding the police officer was one committed in necessary self-defense. None of the instructions as given is made the subject of objection on the part of appellant, although error is assigned because of the refusal to give quite a number of the instructions proposed on behalf of the defense. The first instruction so offered was to advise the jury that it was unlawful for an officer to search a person unless he had first lawfully placed him under arrest. As before indicated, the evidence on neither side tended to show that any attempt was being made by the officer to search this appellant. This appellant had no such relation with Finnegar as would entitle him to resort to a deadly weapon to protect Finnegar from an unlawful search, if such it was. The

instruction as to the right of an officer to search persons found carrying concealed weapons was properly refused. Instructions intended to advise the jury that where an unlawful arrest was attempted to be made, any force necessary to prevent its accomplishment was justifiable, did not correctly state the law and were, therefore, properly refused. (*People* v. *Dallen,* 21 Cal. App. 770, [132 Pac. 1064].) Other instructions refused, which related to the law of self-defense and which contained correct statements of the rights involved in that defense, were properly refused, because the court, in other instructions given, had very fully advised the jury upon that matter. The whole case as presented by the complete record is such as to impress us with the conviction that the verdict and judgment are fully supported, and should be affirmed.

The judgment and order appealed from are affirmed.

Conrey, P. J., and Shaw, J., concurred.